```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT


UNITED STATES OF AMERICA       )
                               )
     v.                        )    Case No. 2:24-cr-00042-wks-1
                               )
SHANT SOGHOMONIAN              )
```

## OPINION AND ORDER

On April 7, 2024, the United States charged the defendant with a criminal complaint under 18 U.S.C. § 844(i) and attached to the complaint an affidavit from a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives describing his investigation. *See* ECF No. 1. The Court appointed the Office of the Federal Public Defender as the attorney of record for the defendant, *see* ECF No. 7. On April 18, United States Magistrate Judge Doyle held a detention hearing and granted the government's request for detention. That same day, the Grand Jury returned an indictment with the following charge:

> On or about April 5, 2024, in the District of Vermont, defendant SHANT MICHAEL SOGHOMONIAN (also known as Michael Soghomonian) maliciously damaged, and attempted to damage and destroy, by means of fire, the building at One Church Street in Burlington, Vermont, which was used in, and in activities affecting, interstate commerce. (18 U.S.C. §[] 844(i)).

*See* ECF No. 22. The Government alleges that the defendant set the fire at the front door of U.S. Senator Bernard Sanders. *See* ECF No. 1-1.

The matter presently before this Court is a competency determination of the defendant, Shant Soghomonian. For the reasons set forth below, the Court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.

## Background

The following events led up to the competency determination presently before this Court.

*1. Dr. Drogin's Report[1]*

Dr. Drogin, a licensed clinical psychologist, completed a forensic psychological assessment of Soghomonian (in August of 2024) at the request of the previous federal public defender assigned to this case. Soghomonian scored in the average range on several psychological testing measures, *see* ECF No. 50 (Competency Hearing Transcript) at 19-24, but he did have a clinically significant anxiety score, *see id.* at 44. He passed two separate measures for malingering. *Id.* The defendant was able to answer questions about the legal process, including

---

[1] The Court has carefully reviewed both reports submitted during the August 18 competency hearing, and relied upon them in making this competency determination. Because the reports are sealed as medical (mental health) records, the Court makes reference in this opinion to what was discussed at the competency hearing and cites to the competency hearing in doing so.

identifying his counsel and what charges he was facing. *Id.* at 24-26.

Dr. Drogin's report stated that the defendant presented in a fashion consistent with previously reported paranoia and a psychiatric diagnosis of Psychosis. *See id.* at 44 ("Mr. Soghomonian presents in a fashion consistent with the paranoia he reported to Melissa Plat (phonetic) Ph.D. in Portland, Oregon and UCLA Health in Los Angeles as well as with the psychiatric diagnosis—psychosis reflected in records obtained from the New York City Health in Queens, New York.").

As discussed in detail at the competency hearing, Dr. Drogin's report included statements from the defendant about his fear of government retaliation and his suspicion that his own defense counsel was involved in some sort of conspiracy or cover-up. For example, the defendant claimed his defense counsel had deliberately avoided investigating information that he had given her. *See id.* at 48. He said that "disappointment is not a strong enough word for how he felt about his legal representation given the time lost by counsel's quote deliberate, I suspect it is, avoidance of him." *Id.* at 49. He claimed that he had serious doubts about his counsel's actions, and he characterized those actions as immoral and unethical. *Id.* The defendant said he didn't know what his other options were, and he said he didn't

know who could help him. *Id.* He said he was "afraid to talk about" what was happening to him. *Id.* at 38. With respect to his counsel, however, he said that he could not trust her and "counsel has not been truthful with me about her knowledge of the actions the Government is taking against me." *Id.* at 49.

Dr. Drogin's report did not provide a specific diagnosis, but it did opine that Mr. Soghomonian was not competent. *See* ECF No. 50 at 35. Dr. Drogin observed that the defendant "additionally exhibited a series of paranoid delusions to a highly significant degree specifically with respect to notions as governmental agents operating against him in a conspiratorial manner and his own current attorneys working with those agents to conspire against him." *Id.* at 45.[2] Dr. Drogin found that "the defendant's behavior and related paranoid ideation prevent him from possessing rational understanding of the proceedings against him and particularly because the paranoia involves the notion of his own attorneys acting against him he does not display sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding." *Id.* at 45-46. Consequently, Dr. Drogin made the recommendation that the defendant be found not competent to stand trial. *Id.*

---

[2] As explained below, Dr. Morse testified that this was the "running theory" that she also shared. *Id.*

4

*2. Motion for Competency Determination*

Defense counsel shared Dr. Drogin's report with the government, and the government filed a motion for a competency determination on September 30, 2024, see ECF No. 32, and counsel for Soghomonian filed a submission on October 2, 2024. On November 4, 2024, the Court granted the motion after holding a hearing and receiving statements from counsel. The Court ordered a competency evaluation and agreed with the defense's request that a local psychiatrist or psychologist be assigned to make the evaluation.

*3. February 24, 2025 Status Conference*

On February 24, 2025, the Court held a status conference. *See* ECF No. 40 (transcript). At the status conference, the parties informed the Court that Dr. Renee Sorrentino had traveled from Quincy, Massachusetts, to meet with the defendant, but that Soghomonian had declined to participate in the evaluation (twice). Counsel for the defendant stated that he had a conversation with the defendant and tried to encourage cooperation with the evaluation, but that he was unsuccessful.

In the middle of the status conference, the defendant made a speech that he addressed "to the public" while clarifying that he

5

had "no words for this court." The statement included a warning to the public about a historic crime committed against American citizens, a crime that the defendant claimed involved classified biotechnological weaponry and a cover up of insane acts of violence by the government. *See* ECF No. 40 at 3-5. The defendant said that "the Federal Public Defender's Office, the U.S. attorneys, and the magistrate judge can lie, deceive me and my family, and deceive the public so that they can have these hearings with the intention of slandering me, impugning my character, and violently suppressing the truth." *Id.* at 3. The defendant stated that: "[t]hey know that I have neither a criminal record nor a troubling mental health history. They know threats have been made against my life and that I face much worse. I refuse to go along with their lies. I refuse to participate in their cover-up, and I refuse to be silenced." *Id.* at 4.

    The Court ordered that the defendant be placed in the custody of the Attorney General's Office for evaluation.

    *4. Dr. Morse's Forensic Evaluation and Testimony on August 18, 2025*

    Dr. Emily Morse conducted an evaluation and wrote a forensic evaluation report, and this Court held a competency hearing on August 18, 2025. At the hearing Dr. Morse testified about her

6

evaluation, and the Court admitted both her report and Dr. Drogin's report as government exhibits.

Dr. Morse works for the Federal Bureau of Prisons as a forensic psychologist, and she holds a license to practice psychology in the State of California.  *See* ECF No. 50 at 3-4.  Dr. Morse based her evaluation upon materials she was given, including Dr. Drogin's report and transcripts from this case, as well as three interview attempts with the defendant that cumulatively totaled about forty minutes.  *See id.* at 7-10.  During the interviews, the defendant declined to participate in evaluations.  Dr. Morse was also able to observe the defendant in his housing unit.  *Id.* at 11.  However, Dr. Morse was unable to obtain additional medical records from defense counsel (or a waiver from Mr. Soghomonian), including the medical records that Dr. Drogin had reviewed.[3]

Because of the limited information available, Dr. Morse did not render a diagnosis for the defendant.  ECF No. 50 at 32.

---

[3] Nor have those medical records been submitted to this Court. During the August competency hearing, Dr. Morse said that:
> I would have liked to have [had] those records.  I think that they would have provided more information which is why I requested them.  So there was some level of—at least in my perspective it appears that this has been an ongoing issue.  It appears that a number of practitioners had—various treatment providers have seen some sort of mental health concern with Mr. Soghomonian.

*See* ECF No. 50 at 45.

However, she theorized that:

> [I]ndividuals who experience a delusional disorder diagnosis often have difficulty assisting counsel in their defense not because of a lack of knowledge and it doesn't appear that that's the case with Mr. Soghomonian, but more because their priorities are not focused on assisting counsel in their defense. Rather often individuals with a delusional disorder diagnosis will be focused on stating on the record that their delusional beliefs are true or calling other individuals['] attention to the matter via the Court record.

*Id.* at 39-40. Dr. Morse, like Dr. Drogin, concluded that the defendant may not be competent to stand trial, and she theorized that this was because of a delusional disorder that prevented him from being able to assist in his own defense. *Id.* at 36-37. As Dr. Morse explained, not all delusional thought processes would create a competency problem—however, in this case her theory was that the defendant's delusional thought processes were related to the legal system and his belief that his attorneys were participating in the cover up. *Id.* This meant that "there is a significant possibility based on a delusional disorder that he would be unable to work with defense." *Id.* at 40-41.

After the competency hearing in August, this Court took the matter under advisement.

## **Legal Standard**

Federal courts apply "a two-prong test for determining competency to stand trial. The defendant must have (1) 'sufficient present ability to consult with his lawyer with a

8

reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *see also* 18 U.S.C. § 4241(d). "In determining competency, the court may consider medical opinion as well as its own observation of the defendant's conduct." *United States v. Morrison*, 153 F.3d 34, 46 (2d Cir. 1998). Pursuant to 18 U.S.C. § 4241(d), the Court applies a preponderance of the evidence standard when making a competency determination.

## Analysis

In making its determination in this case, the Court carefully assessed the report authored by Dr. Eric Y. Drogin, as well as the forensic evaluation and testimony given by Dr. Emily Morse. The Court also considered its own observation of the defendant's conduct, particularly the statements made by the defendant during the status conference held on February 24, 2025.

Both forensic evaluations, Dr. Morse's testimony at the August competency hearing, and the Court's own observations of the defendant in February all support a finding by a preponderance of evidence that the defendant is mentally incompetent to the extent that he is unable to assist properly in his defense. The two separate evaluations, conducted at

9

different times, suggested that the defendant was not competent to stand trial specifically because he may be experiencing delusional thought patterns that prevent him from making rational case-related decisions and collaborating with his counsel. Dr. Drogin's report also specifically mentions medical records that show a history of reported paranoia. There is thus evidence both that delusion and/or paranoia is currently an issue for the defendant, but also that there has been a history of it.

Moreover, the Court observed not only the defendant's statements at the status conference in February, but also the manner in which they were given (interrupting the status conference) and the defendant's demeanor while he delivered his speech. The defendant was sincerely focused on not only delivering these statements but also on distancing himself from participating in the proceedings, which he appeared to conflate with the government cover-up. As quoted above, the defendant specifically mentioned the Federal Public Defender's office as being involved in the lies against him. These statements were consistent with his statements, as described in Dr. Drogin's report, that he could not trust his immoral, unethical counsel.

To the extent that there exists only incomplete information on the defendant's mental state available for more recent evaluations, that is because the defendant has refused to

participate in the evaluations (despite direction from this Court and encouragement by prior defense counsel).

It is true, as defense counsel has argued, that a conspiratorial belief held by a small minority is not enough to meet the standard of mental incompetency. *See, e.g., United States v. Tucci-Jarraf*, 939 F.3d 790, 796-97 (6th Cir. 2019) (defendants could not reverse convictions where they represented themselves at trial and lost; their "idiosyncratic actions and unconventional beliefs" were not proof, by themselves, of an unsound mind (listing cases)). However, in this case the evidence before the Court shows that the defendant is unable to properly assist in his defense because he believes that participating in the legal process amounts to involving himself in deceits and lies, and because he believes the Office of the Federal Public Defender, as well as apparently at least one of his previous attorneys, are not to be trusted and may be involved in a government cover-up.  He is too suspicious of the legal proceedings and his own defense counsel to assist properly in his own defense.

## Conclusion

For the reasons set forth above, the Court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally

incompetent to the extent that he is unable to assist properly in his defense. The Court ORDERS that the defendant be committed to the custody of the Attorney General pursuant to § 4241(d)(1), and that this custody shall include treatment for the defendant in a suitable facility for a reasonable period of time, <u>not to exceed four months</u>, as is necessary to determine "whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceeding to go forward." It is also ORDERED that the facility treating the defendant will file a report detailing the status of treatment and probability of improvement. The Court will then review this report in order to decide whether an additional reasonable period is warranted under 18 U.S.C. § 4241(d)(2)(A), or whether other proceedings are applicable, such as §§ 4246 or 4248.[4]

    Additionally, it is ORDERED that if the director of the facility in which the defendant is hospitalized determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the director shall <u>promptly</u> file a certificate to that effect with the clerk of this Court (*see* 18 U.S.C. § 4241(e)).

---

[4] *See United States v. Magassouba*, 544 F.3d 387, 408 (2d Cir. 2008).

Dated at Burlington, Vermont this 16th  day of October 2025.

                        <u>/s/ William K. Sessions III</u>
                        U.S. District Court Judge